**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-00718-CMA-MEH

TRACY SHEPHERD,

     Plaintiff,

v.

LIBERTY ACQUISITIONS, LLC,
ROBERT G. BUSCH, P.C. d/b/a BUSCH PROFESSIONAL CORPORATION,
and
EQUIFAX INFORMATION SERVICES, LLC,

     Defendants.

---

**ORDER GRANTING DEFENDANT EQUIFAX INFORMATION SERVICES,
LLC'S MOTION FOR SUMMARY JUDGMENT**

---

     This matter is before the Court on Defendant Equifax Information

Services, LLC's ("Equifax") Motion for Summary Judgment.  (Doc. # 16.)  Plaintiff

Tracy Shepherd ("Shepherd") has alleged that Equifax violated one provision of

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i, which requires

consumer reporting agencies such as Equifax to conduct reasonable

reinvestigations when a consumer disputes information in her credit file.[1]

Jurisdiction is proper under 15 U.S.C. § 1681p.

---

[1] In her Complaint, Shepherd also alleges that Equifax violated 15 U.S.C. § 1681e(b),
which requires consumer reporting agencies to follow reasonable procedures to assure
maximum possible accuracy of information in credit reports.  (Doc. # 1, ¶ 18.)  In her
Response to Equifax's Motion for Summary Judgment, however, Shepherd abandons
her § 1681e(b) claim.  (Doc. # 20 at 8.)  In its Reply brief, Equifax "moves for an award
of attorney's fees it incurred in defending the abandoned § 1681e(b) claim."  (Doc. # 24
at 3 n.1.)  The Local Rules of the District of Colorado provide that "[a] motion shall not be

# I. **BACKGROUND**

The following facts are undisputed, unless otherwise noted.  The Court will elaborate, as needed, in its analysis section.

In 2004, Shepherd stopped making payments on a credit card she had obtained from Household Bank.  Household Bank then sold Shepherd's delinquent account to Liberty Acquisitions, LLC ("Liberty").  (Doc. # 16, ¶¶ 2-4.)  On January 17, 2008, Liberty filed a lawsuit against Shepherd in the Mesa County Court for the debt owed on the Household Bank credit card.  Liberty moved the court to award it $873.81 in past-due principal, $90 in court costs and fees, $250 in attorney fees, and $1,067.95 in unpaid interest on the principal, for a total of $2,281.76.  (Doc. # 16-5 at 39.)  On March 13, 2008, the Mesa County Court entered a default judgment against Shepherd for the total amount requested by Liberty.  (*Id.* at 37.)  Liberty collected on the judgment through a series of lawful garnishments against Shepherd's wages in 2008 and 2009, and as of June 16, 2009, had collected $2,443.14.  (Doc. # 16-7.)

On March 23, 2010, Liberty petitioned the Mesa County Court for a new writ of garnishment, seeking an additional $816.04 in post-judgment interest. The next day, the court issued the requested writ to the Grand Junction Federal Credit Union, where Shepherd held a savings account.  (Doc. # 16-6.)  On May 27, 2010, Shepherd filed a motion for relief from the 2008 judgment, asserting that the judgment had been satisfied.

included in a response or reply to the original motion.  A motion shall be made in a separate paper."  D.C.COLO.LCivR 7.1C.  Thus, the Court denies without prejudice Equifax's request for attorneys' fees.

On June 16, 2010, the Mesa County Court entered an order granting Plaintiff's motion for relief from judgment. (Doc. # 16-16.) The order consists of two pages, the first of which is a copy of a proposed order filed by Liberty. The court stamped "DENIED" at the top of Liberty's proposed order. The second page of the order contains the following statement: "For the reasons stated in [Shepherd's] reply and in her original motion, the Court denies [Liberty's] request and reinstates its previous order stating that this judgment is satisfied, [Liberty] shall take nothing further from [Shepherd] for this satisfied judgment and this case is closed." (Id.) On June 18, 2010, the Mesa County Court released the Grand Junction garnishment. (Doc. # 16-6.)

In August of 2010, Equifax began reporting that the Mesa County Court had entered a judgment of $873 against Plaintiff in March of 2008, without noting that the judgment had been satisfied. (Doc. # 16-18, ¶ 26-27.) On August 7, 2010, Equifax received a letter from Plaintiff disputing Equifax's reporting of the Mesa County Court judgment. After Equifax informed its public records vendor, LexisNexis, of the dispute, LexisNexis then accessed a publically available web portal known as CourtLink.[2] Information reported in CourtLink reports is obtained directly from the Mesa County Court through an automated feed established from CourtLink's contract with the State of Colorado. (Doc. # 16-17, ¶ 5.) Through

---

[2] Equifax has a contract with LexisNexis to collect information from public records on its behalf, including information from the Mesa County Court. In the case of a disputed judgment, Equifax contacts LexisNexis and requires it to verify the accuracy of the disputed information by reviewing the pertinent court records. (Doc. # 16-18, ¶ 24.) Use of a public records vendor is standard practice in the credit-reporting industry. (Id., ¶¶ 7-10.)

CourtLink, LexisNexis obtained the judgment docket, which inaccurately listed the 2008 judgment against Shepherd as **unsatisfied**. (*Id.*, ¶ 6-7.)

Equifax sent Shepherd the results of the reinvestigation and a copy of her updated credit file, which described the March 2008 judgment as "pending." Equifax also advised Shepherd to contact the Mesa County Court with further questions. Despite this advisement, Shepherd never went to the Mesa County Court to examine the case file, obtain a copy of the satisfaction order, or attempt to correct the judgment-record error. Nor did Shepherd contact Equifax again to renew her dispute or provide additional information. (Doc. # 16-18, ¶¶ 32-33.)

Shepherd filed this lawsuit on March 21, 2011. (Doc. # 1.) Equifax moved for summary judgment on January 20, 2012. (Doc. # 16.) Shepherd responded on February 12, 2012, and Equifax replied on February 24, 2012. (Doc. ## 20, 24.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is

4

"genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Notably, "generalized, conclusionary, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975); *see also Garret v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider conclusory and self-serving affidavits."); 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.41[1][c] (3d ed. 2011) ("Merely restating a pleading,

submitting new pleadings, or making bald assertions in a legal memorandum, or even in an affidavit, will not enable the nonmovant to withstand a properly supported summary judgment motion.").

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III. ANALYSIS

The FCRA requires credit reporting agencies, upon receipt of a consumer dispute, to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). Although the Tenth Circuit has not addressed the elements of a plaintiff's claim of negligent reinvestigation under § 1681i, at minimum, a plaintiff must show that she (1) disputed the completeness or accuracy of an item in her consumer file; (2) notified the consumer reporting agency of the dispute; (3) the consumer reporting agency failed to conduct a reasonable investigation within the time period allowed; and (4) the plaintiff suffered actual damages as a result of the inaccurate information in her file.[3] *See Eller v. Experian Info. Solutions, Inc.*, No. 09-cv-00040, 2011 WL 3365955, at *16 (D. Colo. May 17, 2011) (citing *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005)). Equifax contends that it is entitled to judgment as a matter of law

---

[3] In addition, most circuit courts to consider the issue have held that a plaintiff filing suit under § 1681i "must make a prima facie showing of inaccurate reporting." *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 890 (9th Cir. 2010); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (collecting cases).

because its reinvestigation of Shepherd's dispute was reasonable under the circumstances. Additionally, Equifax contends that summary judgment is appropriate on Shepherd's § 1681i claim fails because she has not presented sufficient evidence that she suffered actual damages. The Court agrees with Equifax on both arguments.

## A.    EQUIFAX'S REINVESTIGATION WAS REASONABLE

Shortly after Equifax received Shepherd's dispute letter on August 7, 2010, Equifax notified LexisNexis of the dispute. LexisNexis then accessed the most current status of the state court docket through CourtLink, which obtained its information directly from the Mesa County Court. It is undisputed that, at the time of reinvestigation, the Mesa County Court docket reported Shepherd's 2008 judgment as unsatisfied.

Generally, a credit reporting agency may reasonably rely on public court documents. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 286 (7th Cir. 1994). However, "such exclusive reliance may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in [her] credit report." *Id.* Thus, "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information, in this case the Judgment Docket." *Id.* at 287. The issue, then, is whether the circumstances of this case required Equifax to verify the accuracy of the Mesa County Court docket that reported Shepherd's judgment as unsatisfied.

Although the Tenth Circuit has not addressed when a credit reporting agency has a duty to go beyond the initial source of information, *Henson* instructs:

> Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

*Id.*; *accord Cushman v. Trans Union Corp.*, 115 F.3d 220, 225-26 (3d Cir. 1997); *Morris v. Trans Union LLC,* 420 F. Supp. 2d 733, 755 (S.D. Tex. 2006) (listing cases where district courts employed the *Henson* factors to measure the reasonableness of reinvestigation).

Given the circumstances of this case, the Court finds that Equifax had no duty to go beyond the Mesa County Court docket during their reinvestigation of Shepherd's dispute. First, the Court finds that the letter received by Equifax on August 7, 2010 provided little information that would have assisted Equifax in conducting its reinvestigation. The letter states, in pertinent part:

> Liberty Acquisitions, reference #2008C000143, Judgment. This was a judgment that was previously satisfied via a garnishment to my wages from 2008 and 2009. In 2010 this creditor filed a judgment on the same account claiming I still owed them money in the amount of $873. The court ruled that the account was paid in full and no additional monies were owed. It has now appeared on my credit report as a judgment for $873. The judgment is satisfied in full and I owe this creditor no money.

(Doc. # 16-18 at 12.) First, Shepherd's letter inaccurately describes Liberty's 2010 petition for an additional garnishment as a judgment and confuses it with the original 2008 judgment. Shepherd's letter also does not identify which court

"ruled the account was paid in full," nor did she inform Equifax when any such order had been issued.  Further, Shepherd attached no documentation, such as the Mesa County Court's satisfaction order, to her dispute letter.  The reason that credit reporting agencies may be required to "go beyond the original source" when performing a reinvestigation is that the notice of dispute allows the agency to "target its resources in a more efficient manner."  *Henson*, 29 F.3d at 286-87.  A vague, ambiguous, and unsupported dispute notice such as Shepherd's letter does not permit a credit reporting agency to conduct a targeted reinvestigation.

Moreover, when Equifax sent Plaintiff the results of its reinvestigation and a copy of her updated credit file, Equifax advised Plaintiff to contact the Mesa County Court if she had further questions.  Despite this suggestion, Shepherd made no attempt to determine why the docket listed the March 2008 judgment as unsatisfied, nor did she inform Equifax that she believed the docket was an unreliable source of information.  In fact, prior to filing this lawsuit, she never contacted Equifax to renew her dispute or provide additional information.  Thus, Shepherd has failed to present any evidence that she alerted Equifax to the possibility that the judgment docket was an unreliable source.  *See Bagby v. Experian Info. Solutions*, 162 F. App'x 600, 606-07 (7th Cir. 2006) (unpublished) (holding that credit reporting agency had no duty to go beyond the initial information it received where the plaintiff failed to present evidence the source information was unreliable).

Shepherd has also failed to provide any evidence that Equifax knew or should have known that the information provided in the Mesa County Court

docket was unreliable. *See Morris*, 420 F. Supp. 2d at 755 (granting summary judgment on § 1681i claim where the plaintiff failed to produce evidence that the defendant credit reporting agency knew or should have known the source information was unreliable). Rather, as Shepherd concedes, LexisNexis has been collecting public-record information for over twenty years and is a leader in the industry. (Doc. # 16 at ¶ 25.) Thus, Equifax's standard reinvestigation procedures were sufficient in this case to satisfy its obligations under § 1681i.

In her response, Shepherd relies heavily on *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008), which held that a "reinvestigation that overlooks documents in the court file expressly stating that **no** adverse judgment was entered falls far short of [the reasonable diligence] standard." *Id.* at 1071 (emphasis in original). However, *Dennis* is highly distinguishable on its facts. In *Dennis*, the plaintiff had reached a settlement agreement that specifically provided that no judgment would be entered against the plaintiff. *See id.* at 1068. Nevertheless, the credit reporting agency prepared a report indicating that a civil claim judgment was entered against the plaintiff. *See id.* On reinvestigation, the credit reporting agency asked its public records vendor to review the plaintiff's court file, which included the a written stipulation between the parties that no judgment would be entered against the plaintiff. *See id.* at 1070. Thus, the credit reporting agency possessed documentation that confirmed exactly what the plaintiff had claimed. In this case, by contrast, Equifax found documentation in the form of the judgment docket that appeared to contradict what Shepherd claimed. Thus, *Dennis* does not provide any support for Shepherd's claim.

Given the lack of specificity in Plaintiff's dispute letter, her failure to provide any supporting documentation, and the general reliability of LexisNexis and the court records it obtained, no reasonable jury could find that Equifax failed to conduct a reasonable reinvestigation. Thus, summary judgment is appropriate on Plaintiff's § 1681i claim.[4]

## B.   PLAINTIFF DID NOT SUFFER ACTUAL DAMAGES

In addition, the Court finds that summary judgment is appropriate on Shepherd's § 1681i claim because she has failed to establish that she suffered actual damages. *See Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 2d 1210, 1225-26 (D. Colo. 2011) ("Where a plaintiff fails to meet [her] burden of showing actual damages caused by an FCRA violation, summary judgment is appropriate.").

Shepherd alleges that she suffered emotional distress damages as a result of Equifax's inaccurate reporting.[5] A plaintiff seeking emotional distress damages under the FCRA must present evidence not only of damages, but must also establish that she suffered any such damages as a result of the credit reporting agency's negligent conduct. *See Bagby*, 162 F. App'x at 604.

---

[4] Shepherd also requests punitive damages, which may be awarded when a credit reporting agency "willfully fails to comply with" the FRCA. 15 U.S.C. § 1681n. The Supreme Court has interpreted "willful" to require a showing that a credit reporting agency violated the FCRA knowingly *or* with reckless disregard. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007). As discussed, Shepherd has failed to demonstrate that Equifax negligently, let alone willfully, violated the FCRA by failing to conduct a reasonable reinvestigation. Thus, Shepherd's claim for willful violation of § 1681i necessarily fails as a matter of law.

[5] Shepherd does not claim that she suffered any economic damages as a result of Equifax's alleged FCRA violation.

The only evidence provided by Shepherd in support of her emotional distress claim is her own declaration.[6] (Doc. # 20-1.) A plaintiff's own testimony may be sufficient by itself to establish emotional damages under the FCRA, but the testimony must contain more than conclusory allegations of harm and causation. *Llewellyn*, 795 F. Supp. 2d at 1228 (listing cases); *Kittle v. Accredited Collection Agency Inc.*, No. 07-cv-01716, 2010 WL 2650479, at *2 (D. Colo. June 30, 2010) (unpublished) ("conclusory, general, and uncorroborated testimony . . . is not sufficient to support an award of damages for emotional distress.").

In her declaration, Plaintiff claims that she feels "totally demoralized" and "sad a lot," worries that she will not be able to refinance her home, suffers depression, anxiety, and embarrassment, and claims that the "emotional trauma . . . has impacted every area of my life." (Doc. # 20-1 at 6-7.) The Court finds that these self-serving, conclusory, and uncorroborated statements are not sufficient to create a triable issue as to whether Plaintiff suffered emotional distress damages. *See Kittle*, 2010 WL 2650479, at *2 (finding that plaintiff's statement

---

[6] Shepherd also submits a declaration from Larry Cathey, a self-described "good friend" of Shepherd. (Doc. # 20-2.) However, Mr. Cathey's declaration is neither sworn nor declared to be true under the penalty of perjury. Courts do not ordinarily consider declarations that do not meet one of these two standards. *See* 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.94[2][a] (3d ed. 2011) ("An affidavit or declaration submitted to support or oppose summary judgment must be a sworn document or declared to be true under the penalty of perjury."). The requirement that an affidavit or declaration be sworn or declared true under penalty of perjury is essential "to ensure that witnesses are aware of the consequences of making false statements." *Barraza v. United States*, 526 F. Supp. 2d 637, 642 (W.D. Tex. 2007). Because Shepherd cannot show that Mr. Cathey was aware of the possible consequences of making false statements, his declaration does not meet the requirements for competent summary judgment evidence and his declaration will not be considered by the Court. *See id.* (not considering statements that were not verified as "true and correct" or made "under penalty of perjury."); *Geter v. Powers*, No. 08:07-3849, 2008 WL 5245321, at *1 (D.S.C. Dec. 16, 2008) (unpublished) (same).

that she was "extremely upset, suffered emotional distress including excessive stress, headaches, fear, sleeplessness, loss of appetite, withdrawal from social situations and depression" was not sufficient to support award of damages for emotional distress); *Bagby*, 162 F. App'x at 605 (allegations that plaintiff "stresses," gets tension headaches, and clashes with her fiancé over credit problems "are, at most, self-serving and conclusory statements about her emotional distress.").

According to her deposition testimony, Plaintiff has never sought any psychological treatment for the emotional distress she claims she suffered as a result of Equifax's conduct. (Doc. # 16-5 at 73:24-74:3.) Nor has she offered any competent evidence to corroborate her allegations. Moreover, Shepherd also failed to submit sufficient evidence that Equifax caused the alleged emotional harm. The only evidence of causation is Shepherd's declaration that "I have these symptoms when I think of Equifax and how it treated me in this reinvestigation." (Doc. # 20-1, ¶ 12.) Such a statement is too conclusory to raise a triable issue as to whether Shepherd's emotional harm, if any, was caused by Equifax's conduct. Thus, Shepherd's failure to provide sufficient evidence of actual damages is an additional reason to grant summary judgment on her § 1681i claim. *See Tilley v. Global Payments, Inc.*, 603 F. Supp. 2d 1314, 1324 (D. Kan. 2009) ("Damages are an element of plaintiff's negligent noncompliance claim and, without evidence of damages, summary judgment is appropriate.").

## IV. <u>CONCLUSION</u>

Based on the foregoing, it is ORDERED that Defendant Equifax's Motion

for Summary Judgment (Doc. # 16) is GRANTED.

It is FURTHER ORDERED that all claims against Defendant Equifax are

DISMISSED WITH PREJUDICE.

DATED: July __05__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge