**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-00718-CMA-MEH

TRACY SHEPHERD,

    Plaintiff,

v.

LIBERTY ACQUISITIONS, LLC,
ROBERT G. BUSCH, P.C. d/b/a BUSCH PROFESSIONAL CORPORATION, and
EQUIFAX INFORMATION SERVICES, LLC,

    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS LIBERTY ACQUISITIONS, LLC AND ROBERT G. BUSCH, P.C. AND GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff Tracy Shepherd's Motion for Partial Summary Judgment as to Defendants Liberty Acquisitions, LLC ("Liberty") and Robert G. Busch P.C. ("Busch") (Doc. # 18), as well as Liberty and Busch's Motion for Summary Judgment (Doc. # 17). Shepherd has alleged that Liberty and Busch violated two provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, which imposes civil liability on debt collectors for certain prohibited debt collection practices. Jurisdiction is proper under 15 U.S.C. § 1692k.

## I. **BACKGROUND**

The following facts are undisputed, unless otherwise noted. The Court will elaborate, as needed, in its analysis section.

In 2004, Shepherd stopped making payments on a credit card she had obtained from Household Bank.[1] Household Bank then sold Shepherd's delinquent account to Liberty. (Doc. ## 1 at 1-2; 9 at 2.) On January 17, 2008, Liberty, with Busch acting as its attorney, filed a lawsuit against Shepherd in Mesa County Court for the debt she owed on the Household Bank credit card. (Doc. ## 18 at 3; 21 at 2.) Liberty moved the court to award it $873.81 in past-due principal, $90 in court costs and fees, $250 in attorney fees, and $1,067.95 in unpaid interest on the principal, for a total of $2,281.76. (Doc. ## 17-3 at 1; 19 at 2.) On March 13, 2008, the Mesa County Court entered default judgment against Shepherd for the total amount requested by Liberty. (Doc. # 18-5.) As to the amount of interest awarded, the judgment merely states, "Interest (23.90% per annum)" and lists $1,067.95 as the amount of interest due. (*Id.*) Liberty collected on the judgment through a series of lawful garnishments against Shepherd's wages in 2008 and 2009, and as of June 16, 2009, had collected $2,443.14. (Doc. ## 18 at 3; 21 at 2.)

---

[1] Although the parties refer to the credit card as having originated with "Orchard Bank," that name appears interchangeable in the record with "Household Bank." (*See, e.g.*, Doc. # 17-1 at 2 (referring to Shepherd's credit account as "originally held by Household Bank (Sb), N.A. / Orchard Bank").) Accordingly, the Court will continue to refer to the account as having originated with Household Bank.

On March 23, 2010, Liberty petitioned the Mesa County Court for a new writ of garnishment, seeking an additional $816.04 in post-judgment interest. (Doc. # 18-7.) The next day, the court issued the requested writ to the Grand Junction Federal Credit Union, where Shepherd held a savings account. (Doc. # 18-8.)

On May 27, 2010, Shepherd filed a motion for relief from the 2008 judgment, asserting that the judgment had been satisfied. (Doc. # 17 at 5; 19 at 3.) Liberty responded to the motion for relief and, as part of the response, requested that the court award it attorneys' fees under Colorado Rule of Civil Procedure 11(a), for defending what it characterized as Shepherd's "groundless motion." (Doc. # 17-8 at 2.)

On June 16, 2010, the Mesa County Court entered an order granting Shepherd's motion for relief from judgment. (Doc. # 17-10.) The order consists of two pages, the first of which is a copy of a proposed order filed by Liberty. The court stamped "DENIED" at the top of Liberty's proposed order. The second page of the order contains the following statement: "For the reasons stated in [Shepherd's] reply and in her original motion, the Court denies [Liberty's] request and re-instates its previous order stating that this judgment is satisfied, [Liberty] shall take nothing further from [Shepherd] for this satisfied judgment and this case is closed." (*Id.*) On June 18, 2010, the Mesa County Court released the Grand Junction garnishment. (Doc. # 18-1 at 2.)

Shepherd filed this action on March 21, 2011. (Doc. # 1.) She moved for partial summary judgment as to Liberty and Busch on January 20, 2012. (Doc. # 18.) That

3

same day, Liberty and Busch moved for summary judgment against her. (Doc. # 17.) Both motions are ripe.[2]

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on

---

[2] Liberty and Busch responded to Shepherd's motion on February 10, 2012 (Doc. # 21), and she replied on February 24, 2012 (Doc. # 23). Shepherd responded to Liberty and Busch's motion on February 7, 2012 (Doc. # 19), and they replied on February 21, 2012 (Doc. # 22).

an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). However, if the movant will bear the ultimate burden of persuasion at trial, it must support its motion with sufficient evidence to establish its right to a judgment after trial if the non-movant were to fail to rebut the evidence. *See Anderson v. Dept. of Health & Human Servs.*, 907 F.2d 936, 947 (10th Cir. 1990).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Notably, "generalized, conclusionary, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975); *see also Garret v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider conclusory and self-serving affidavits."); 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.41[1][c] (3d ed. 2011) ("Merely restating a pleading, submitting new pleadings, or making bald assertions in a legal memorandum, or even in an affidavit, will not enable the nonmovant to withstand a properly supported summary judgment motion.").

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. ANALYSIS

In 1977, Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). As relevant here, the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." § 1692(f). Debt collectors may collect only those amounts that are "expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1). Further, debt collectors may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e.

The FDCPA provides for a civil cause of action to enforce its provisions, with debt collectors who violate it liable for actual damages, statutory damages up to $1,000, and reasonable attorney's fees and costs. § 1692k(a)(1)–(3); *see, e.g.*, *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009). Because the FDCPA is a strict liability statute, a plaintiff need only demonstrate one violation of the

statute to be entitled to a favorable judgment. *See Doshay v. Global Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1304 (D. Colo. 2011).

In the instant case, Shepherd alleges that Liberty and Busch violated §§ 1692f(1) & 1692e by attempting to collect, and representing to the Mesa County Court that they were entitled to, post-judgment interest at the rate of 23.9% on Shepherd's defaulted account. (Doc. # 1 at 4-5.) She also alleges that Liberty and Busch violated these provisions by seeking untaxed costs and attorneys' fees in the state court. Because the Court agrees with Shepherd's former assertion, it need not address the latter. *See Doshay*, 796 F. Supp. 2d at 1304 ("although Plaintiff alleges numerous statutory violations, the Court need only address one violation").

**A.     THRESHOLD ISSUES**

Before analyzing Shepherd's claims under the FDCPA, the Court will address several threshold issues that both sides have raised.

1.     <u>Dismissal of Busch Is Unwarranted</u>

Liberty and Busch assert that, because Shepherd did not include Busch in the title, prefatory language, and "wherefore" clause in Count One of the Complaint, she has "fail[ed] to identify any cause of action against Defendant Busch" and, accordingly, Busch should be dismissed as a defendant. (Doc. # 17 at 6.) The Court disagrees for three reasons.

First, as Shepherd notes, the Complaint is "replete with facts allegedly committed by Liberty **and Busch** which clearly state a cause of action." (Doc. # 19 at 6 (emphasis

added).)  Additionally, and in evident response to such factual allegations, Liberty and Busch repeatedly refer to themselves as "Defendants" in their factual recitations.  (*See* Doc. ## 17 at 3-6; 21 at 2-3.)  Second, even if the occasional absence of Busch's name in the Complaint were to cast doubt on whether Shepherd intended to include Busch in Count One, the Court would be inclined to grant her leave to amend the Complaint in light of its context, which indicates that Count One was also directed at Busch.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Third, Busch did not move for a more definite statement under Rule 12(e) or to be dismissed under Rule 12(b)(6).  Although the Court disagrees with Shepherd's characterization of what occurred as an "obvious typographical error" (Doc. # 19 at 6), the occasional omission of Busch's name does not cast serious doubt on whether Count One includes Busch, who is specifically named with Liberty in the body of that count.

    2.    <u>*Rooker-Feldman* and Collateral Estoppel Doctrines Do Not Apply</u>

The parties invoke the doctrines of *Rooker-Feldman* and collateral estoppel, although naturally enough they urge the Court to reach opposite conclusions under both doctrines.  However, neither doctrine is necessary or helpful to the Court's analysis.

    *a)*    *Rooker-Feldman*

"The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court."  *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012).  In the instant case, as is evident from her pleadings, Shepherd is not

complaining of injury caused by the Mesa County Court's judgment, nor is she seeking to have this Court review such judgment. Rather, she succeeded in the state court in gaining relief from the 2008 judgment and, as discussed below, asserts that the state court's judgment controls the outcome of this case. As such, application of the *Rooker-Feldman* doctrine would be inapposite here.

### b)  Collateral estoppel

Collateral estoppel, which is also known as issue preclusion, means "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). It is "designed to prevent needless relitigation and bring about some finality to litigation." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). Collateral estoppel will bar a claim if the following elements are met:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.*

Liberty and Busch argue that the Mesa County Court rejected the claims Shepherd brings here.[3] They assert that Shepherd's May 27, 2010 motion for relief

---

[3] "Issue preclusion is an affirmative defense and must be pleaded and proved." *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1106 (10th Cir. 2007) (quotation marks and citation omitted). Liberty and Busch did not plead issue preclusion in their Answer. (*See* Doc. # 9 at 4-5.) Nonetheless, the Court will address Liberty and Busch's assertion because, as discussed below, doing so helps illustrate why the doctrine is inapplicable here.

urged the state court to find that Liberty and Busch had engaged in unconscionable debt collection practices. They reason that, because the court granted Shepherd's request but without specifically finding that Liberty and Busch acted unconscionably, the court's action "can only be considered a denial of [Shepherd's] request." (Doc. # 17 at 8.) Conversely, Shepherd argues that, because her motion was granted, "any explanation of the state court's ruling quite simply determines the money was not owed, [which is] the lynchpin of a 15 U.S.C. § 1692(f) violation." (Doc. # 23 at 4.) However, both arguments miss the mark.

As noted previously, the Mesa Count Court merely stated that Shepherd's "judgment is satisfied, [Liberty] shall take nothing further from [Shepherd] for this satisfied judgment and this case is closed." The state court made no explicit finding—one way or the other—on Shepherd's assertion that Liberty and Busch had acted unconscionably. Such silence precludes the Court from agreeing with either of the conclusions drawn by the parties here.

More importantly, though, despite the parties' apparent agreement that all the elements of collateral estoppel are satisfied, no real argument is advanced, nor is the Court persuaded that, the issue presented to the Mesa County Court is identical to the one Shepherd brings here. To the contrary, Liberty and Busch concede that Shepherd's arguments before the state court were premised on Colorado state law, while her claims in this Court are under a "different, yet similar, federal statute." (Doc. # 17 at 7-8.) Likewise, Shepherd asserts that, when she requested relief from the 2008

judgment, she "certainly could not have raised her FDCPA claim or any other affirmative claim for damages [because] . . . the court lacked jurisdiction." (Doc. # 23 at 4.) Accordingly, the Court determines that the issues Shepherd brings here are not identical to any issue that may have been previously decided by the state court; thus, the doctrine of collateral estoppel does not apply.

**B.     COLLECTION OF POST-JUDGMENT INTEREST**

Shepherd's primary argument in this case is that Liberty and Busch attempted to collect an amount of post-judgment interest not "expressly authorized by the agreement creating the debt or permitted by law," in violation of § 1692f(1).[4]  On this point, and in light of the FDCPA being a strict-liability statute, the Court agrees.  The Court also agrees with Shepherd's assertion that Liberty and Busch have not meet their burden of setting forth specific facts to establish a genuine issue for trial on their affirmative defense of bona fide error.

---

[4] Although the statute appears to prohibit only the actual collection of amounts not expressly authorized, courts have regularly interpreted § 1692f(1) to prohibit the **attempted** collection of such amounts.  *See Williams v. Edelman*, 408 F. Supp. 2d 1261, 1268-69 (S.D. Fla. 2005); *Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564, 1568 (M.D. Fla. 1996); *Gigli v. Palisades Collection, L.L.C.*, No. 3:CV-06-1428, 2008 WL 3853295, at *5 (M.D. Pa. Aug. 14, 2008) (unpublished).  The Court agrees with the reasoning in these cases and follows it here.

    1.    <u>Liability Under § 1692f(1)</u>

As an initial matter, Liberty and Busch have not argued, nor has the Court found any evidence indicating, that the cardholder agreement Shepherd entered into with Household Bank expressly authorized collection of post-judgment interest at the rate of 23.9% (or any other rate, for that matter).[5] (*See* Doc. # 17-11.) Instead, Liberty and Busch argue that such a rate was proper because the agreement states, "if we must bring legal action, [we will] require you to pay all of our costs of collection, including arbitration, court costs, and attorneys' fees." (*See* Doc. # 17 at 10.) However, Liberty and Busch cite no case, nor is the Court aware of any, holding that post-judgment interest is to be considered a "cost of collection." To the contrary, the terms appear to be mutually exclusive. *See, e.g.*, *In re Indian Motorcycle Mfg., Inc.*, No. 95-CV-00777, 2005 WL 4685044, at *4 (D. Colo. Dec. 14, 2005) (unpublished) ("Judgment will include post-Judgment interest . . . plus all costs of collection").

Further, Shepherd argues, Liberty and Busch do not dispute, and the Court agrees that post-judgment interest at 23.9% was not "permitted by law" under Colorado statutes governing Liberty and Busch's conduct before the Mesa County Court. (*See* Doc. ## 18 at 6; 19 at 12-13.) Section 5-12-102(4) of the Colorado Revised Statutes states that, absent an exception for interest on appealed judgments that is inapplicable here,

---

[5] In fact, where interest rates (such as "monthly periodic rates" and "annual percentage rates") are discussed in the cardholder agreement, there appears a cross-reference to "the accompanying sheet entitled 'Important Information Regarding Your Account'": a document found nowhere in the record. (*See, e.g.*, Doc. # 17-11 at 3.)

> creditors shall be allowed to receive interest on any judgment recovered before any court authorized to enter the same within this state from the date of entering said judgment until satisfaction thereof is made either: (a) [a]t the rate specified in a contract or instrument in writing which provides for payment of interest at a specified rate until the obligation is paid . . . ; or (b) [i]n all other cases where no rate is specified, at the rate of eight percent per annum compounded annually.

Again, because Liberty and Busch have produced no "contract or instrument in writing" that provides a specified rate for post-judgment interest, their attempt to collect post-judgment interest from Shepherd at the rate of 23.9% was not "permitted by law" under § 1692f(1) of the FDCPA.[6]

### 2. Bona Fide Error Defense

Because the Court has determined that Liberty and Busch violated the FDCPA by requesting an amount that was neither expressly authorized by the agreement creating Shepherd's debt nor permitted by law, the Court will next address Liberty and Busch's bona fide error defense.

"The bona fide error defense is an affirmative defense that insulates debt collectors from liability even when they have violated the FDCPA." *Johnson v. Riddle*,

---

[6] To the extent Liberty and Busch argue that attempting to collect post-judgment interest at 23.9% was "permitted by law" because the state court's March 13, 2008 judgment stated, "Interest (23.90% per annum)," the Court is not persuaded. As Liberty and Busch admit, "The Court Order does not distinguish between pre-judgment and post-judgment; rather it awards Liberty interest at 23.9%." (Doc. # 17 at 11.) Shepherd did not attack in the state court, nor has she challenged here, the amount of pre-judgment interest awarded by the state court, which she paid. Regardless, the state court based its order on Liberty and Busch's request. (*See* Doc. # 17-3.) As such, agreeing with their argument would mean that debt collectors could escape liability any time they could convince a court to enter a prepared order for collection of an amount not expressly authorized by the agreement creating the debt.

443 F.3d 723, 727 (10th Cir. 2006); *see Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011) (describing the bona fide error defense as a "narrow carve out to the general rule of strict liability" under the FDCPA). Specifically, the FDCPA's bona fide error provision states:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

§ 1692k(c). Accordingly, and as the Tenth Circuit explained in *Riddle*, "an FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." 443 F.3d at 727. However, since *Riddle* was decided, the Supreme Court has held that the bona fide error defense does not apply to mistakes of law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1611 (2010). In the instant case, because the parties disagree primarily as to whether the third prong of the bona fide error test was satisfied, the Court will focus its analysis on whether Liberty and Busch maintained procedures reasonably adapted to avoid the error Shepherd asserts.

Analysis of the "procedures" prong of the bona fide error defense involves a two-step inquiry: "first, whether the debt collector 'maintained'—*i.e.*, actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Riddle*, 443 F.3d at 729. This

is a "fact-intensive inquiry," which proceeds on a "case-by-case basis and depend[s] upon the particular facts and circumstances of each case." *Owen*, 629 F.3d at 1274 (granting summary judgment for debtor because the debt collector's "limited procedures placed in [the] record were not reasonably adapted to avoid the type of . . . errors" raised by the debtor).

As to the first step, Liberty and Busch have provided some evidence demonstrating that procedures were actually employed to avoid violating the FDCPA. (*See* Doc. # 17-5.) For example, Defendant Busch, in his affidavit, avers that: "[e]ach employee at Liberty . . . is trained to review the creditor's records and input the outstanding balance and interest rate into the system"; and "[p]rior to initiating a lawsuit against a debtor in default, the original creditor's records are reviewed to determine the outstanding balance and interest rate." (*Id.*) In this case, Busch states that "[t]he original creditor's records were reviewed prior to initiating a lawsuit against [Shepherd] in Mesa County Court." (*Id.* at 4.) This evidence satisfies the "low threshold" required by the first step of the inquiry. See *Owen*, 629 F.3d at 1274.

However, the Court agrees with Shepherd that Liberty and Busch fail at the second step. To begin with, Liberty and Busch's response to Shepherd's motion appears to misapprehend the nature of the error she asserts. Shepherd does not allege that Liberty and Busch failed to maintain safeguards for accurately reporting the information creditors give them. Rather, the error she asserts is that no procedures exist to ensure that such information is expressly authorized in the agreement creating

the debt. Accordingly, Liberty and Busch's response evinces either a misunderstanding of the FDCPA's requirements or the crux of Shepherd's argument. Because mistakes of law do not constitute bona fide errors, the Court will treat Liberty and Busch's response as attempting to articulate a factual or clerical mistake. As explained below, however, their response is unavailing.

The primary deficiency in Liberty and Busch's argument is that their procedures—of ensuring that what they say in court matches what they have been told by creditors—are not aimed at ascertaining anything from the underlying agreement or, for that matter, ensuring that such an agreement exists. Specifically, their procedures do not reflect the ability to verify, in the agreement creating the debt, the information contained in the creditor's reports. Such inability is particularly problematic where, as here, the debtor specifically asserts that the amount at issue was not authorized by the underlying agreement. Once Shepherd filed her motion for relief from the 2008 judgment, Liberty and Busch were on notice as to her specific assertion that their claims of 23.9% post-judgment interest were not supported by any written agreement. (*See* Doc. # 18-10.) No evidence indicates that Liberty and Busch investigated her claim or had any procedures in place to do so. Instead, they responded to her motion by again asserting entitlement to that amount of post-judgment interest and requesting attorneys' fees. (*See* Doc. # 18-12 at 2-3.) Although Liberty and Busch now state that reliance on the creditor's information "allowed [Shepherd's] account to escape the safeguards put in place by [them]" (Doc. # 17 at 14), they have provided no evidence of safeguards which

warn them of creditor information that is unsupported by the underlying credit agreement.[7]

Accordingly, the Court is not persuaded by Liberty and Busch's argument that "[i]n general, a collection agency may rely upon the information provided by a creditor . . . ." (Doc. # 17 at 11.)[8] Without provisions in place that are reasonably adapted to avoid the error committed here, such reliance is unreasonable. Moreover, in the instant case, the pertinent information provided by Household Bank simply stated, "Interest Rate: 23.9." (Doc. # 17-2.) No specific mention was made as to the rate of post-judgment interest. Thus, Liberty and Busch's purported reliance on such information was unreasonable.

To be sure, the Court recognizes that the FDCPA does not require debt collectors to independently investigate and verify the validity of every debt to qualify

---

[7] Liberty and Busch also attempt to shift the burden to Shepherd to disprove their affirmative defense. (*See, e.g.*, Doc. # 21 at 6 ("Plaintiff has provided no undisputed facts to refute Defendants' claim of bona fide error.").) Shepherd, as a movant who does not bear the ultimate burden of persuasion on Liberty and Busch's affirmative defense, pointed out to the Court a lack of evidence essential to Liberty and Busch's defense— *i.e.*, the absence of a procedure to ensure that amounts requested are expressly authorized by the agreements creating the debt. As such, Liberty and Busch were required to set forth specific facts showing that such a procedure existed. They have failed to do so.

[8] Liberty and Busch string-cite several cases to support their argument. Having reviewed those cases, however, the Court finds them distinguishable for various reasons and rebutted by other cases that have reached contrary conclusions. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939 (9th Cir. 2011); *Owen*, 629 F.3d 1263; *Reichert v. Nat'l Credit Sys. Inc.*, 531 F.3d 1002 (9th Cir. 2008). Essentially, looking to other cases is of only limited utility in addressing the bona fide error defense. *See Owen*, 629 F.3d at 1274 ("Despite surveying the case law, we have located no definitive list of procedures, or even universally applicable parameters, by which to assess the third element [of the bona fide error defense].").

for the bona fide error defense. *See, e.g.*, *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). However, debt collectors cannot fulfill their obligation to refrain from collecting amounts not expressly authorized by the agreement creating the debt by maintaining procedures that entirely delegate responsibility for reviewing such agreements to creditors, at least not in the absence of safeguards by which they can review such agreements when the information conveyed is explicitly refuted by the debtor.

Accordingly, on the facts and evidence as presented here, the procedures maintained by Liberty and Busch were not reasonably adapted to avoid the error that occurred and, thus, the bona fide error defense does not shield Liberty and Busch from liability.

**C.    DAMAGES**

Because the Court has determined that Shepherd is entitled to summary judgment in her favor on liability, the Court will award her statutory damages of $1,000 under § 1692k(2)(A), as well as reasonable attorney's fees and costs under § 1692k(3). However, for the reasons stated by the Court in its Order Granting Defendant Equifax Information Services LLC's Motion for Summary Judgment (Doc. # 39), Shepherd is not entitled to actual damages under § 1692k(1) for the "emotional distress" she allegedly suffered.[9] As such, contrary to Shepherd's assertion, the issue of causation need not be presented to a jury.

---

[9] "The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998); *see also Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982) ("There is no indication in the statute that award of statutory damages must be based on proof of actual damages.").

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's Motion for Partial Summary Judgment as to Defendants Liberty Acquisitions, LLC and Robert G. Busch P.C. (Doc. # 18) is GRANTED, and Defendants Liberty Acquisitions, LLC's and Robert G. Busch, P.C.'s, Motion for Summary Judgment (Doc. # 17) is GRANTED IN PART as to actual damages and DENIED in all other respects.

Pursuant to this ORDER, Plaintiff is entitled to statutory damages of $1,000, as well as reasonable attorney's fees and costs. As such, it is

FURTHER ORDERED that Plaintiff shall have her costs by the filing of a Bill of Costs with the Clerk of the Court within fourteen days of the entry of judgment, and she shall file a motion for reasonable attorney's fees with this Court within fourteen days of the entry of judgment. It is

FURTHER ORDERED that the Final Trial Preparation Conference set for July 13, 2012, and the four-day Jury Trial set for July 23, 2012, are VACATED.

Accordingly, this case is now DISMISSED WITH PREJUDICE.

DATED: July __09__, 2012

BY THE COURT:

_Christine M. Arguello_
_____
CHRISTINE M. ARGUELLO
United States District Judge